ISIDORE SCHWARTZ, RESPONDENT, v. KING REALTY AND INVESTMENT COMPANY, A CORPORATION, APPELLANT.

Argued February 18, 1919—Decided June 3, 1919.

1. It is not necessary that a defendant should have actual possession of the goods in order to maintain an action of replevin against him. If he exercises control over them it is sufficient to uphold the action.
2. The Bulk Sales act (*Pamph. L.* 1915, *p.* 377) is not applicable to a case where the whole or a large part of a stock of merchandise is sold at public auction sale.

On appeal from Orange District Court.

The state of the case agreed upon between counsel of the respective litigants shows that some time prior to June, 1918, the Schultz Printing Company made and executed a chattel mortgage on the assets of its printing business. Prior to the above date one Van Poznak, a duly licensed auctioneer, was employed by the Schultz company to sell all its assets at public sale. The auctioneer inserted in the Newark newspapers notices of the sale of the property of the printing concern, and distributed the newspapers containing the notice among the trade who might be interested in making purchases. On the date above mentioned the sale took place, and was conducted by the auctioneer and was largely attended, and the plaintiff who was present purchased a part of the assets at the sale, for which he made payment to the auctioneer.

The King Realty and Investment Company, the defendant, was landlord of the premises occupied by the printing concern. On June 20th, 1918, it issued a distress warrant for $300, being rent for the months of March, April, May and June, 1918, against the goods and chattels of the Schultz company, and put the warrant into the hands of a constable to destrain on such goods and chattels, but no actual distraint was made until July 22d, 1918, when the constable

took possession of the goods and chattels purchased by the plaintiff at the auction sale and refused to deliver them to him unless the claim of rent was satisfied, which the plaintiff refused to do. After the auction sale the chattel mortgage was paid.

The plaintiff made a demand upon the defendant company to deliver up to him the possession of the goods purchased at the auction sale, which demand was refused. The plaintiff thereupon brought his writ of replevin, and having filed a bond in accordance with the statute the sergeant-at-arms took possession of the property and delivered it to the plaintiff.

At the close of the plaintiff's case a motion for nonsuit was made on the grounds that—*first,* the action was instituted against the wrong party, inasmuch as the defendant company did not have possession of the goods in question and the real defendant should be the constable, and *secondly,* that inasmuch as no attempt had been made to comply with the provisions of the Bulk Sales law, that the sale by the Schultz Printing Company to Isidore Schwartz was void as against creditors, and that the defendant company was a creditor, and that the distress proceedings were instituted before the expiration of ninety days from the date of the sale by the printing company. The motion was denied, to which denial an exception was taken. No testimony was offered by the defendant, and, thereupon, in its behalf, a motion was made on the same grounds for the direction of a judgment in its favor, which motion was also denied, and a judgment for possession was entered.

The trial judge found, as a matter of fact, that the constable acted as agent for defendant company when making the distraint under the distress warrant, and that possession by the agent was possession by the principal.

The trial judge further held that the compliance with the Bulk Sales law was an affirmative defence, and no proof being offered by the defendant that there was no compliance with the law, the defendant was not entitled to succeed on either motion to nonsuit or for a direction of a finding

in its favor. The trial judge also held that the Bulk Sales law was inapplicable to the facts of the case as they appeared before him.

Before Justices BERGEN, KALISCH and BLACK.

For the appellant, *Edward R. McGlynn.*

For the respondent, *Furst & Furst.*

The opinion of the court was delivered by

KALISCH, J. The position taken by counsel of appellant that the defendant was not a proper party to the action, and, therefore, there should have been either a nonsuit or judgment for defendant, is untenable.

The case agreed upon concedes that the defendant issued the distress warrant and gave it to the constable to execute, which officer, under the authority of the warrant, took possession of the goods and chattels purchased by the plaintiff at the auction sale. It is further conceded that a demand to deliver up these goods and chattels to the plaintiff was made by him upon the defendant, which the defendant refused. There was sufficient testimony before the trial judge of the exercise of dominion by the defendant over the property to warrant a finding that it was in possession of the same. In law the defendant company was constructively in possession by its agent, the constable.

It is not necessary that a defendant should have actual possession of the goods in order to maintain an action of replevin against him. If he exercises control over them it is sufficient to uphold the action. *Allen* v. *Crary*, 10 *Wend.* 349.

. The legal rule as stated in *Cobb. Repl.* 29, is: "Replevin is essentially a possessory action and does not lie against one who is not either actually or constructively in possession."

It is well to observe here that in this state replevin lies not only for the unlawful taking of the goods but also for unlawful detention. *Comp. Stat., p.* 4368, § 2.

Another ground advanced by appellant's counsel and relied on for a reversal of the judgment below is, that the plaintiff acquired no title to the goods purchased at the sale, because it was not made to appear that the Bulk Sales act was complied with.

The state of the case discloses that the goods purchased by the plaintiff were sold to him at an auction sale which had been widely advertised, and was largely attended by prospective buyers. Whether the goods were sold by the piece or otherwise does not appear.

The Bulk Sales act is entitled "An act to prohibit sales of merchandise, goods and chattels in fraud of creditors." *Pamph. L.* 1915, *p.* 377.

This act, in substance, provides that the sale of the whole or a large part of the stock or merchandise, &c., otherwise than in the ordinary course of trade, and in the regular and usual prosecution of the seller's business or occupation shall be void against the seller's creditors, unless the purchaser shall in good faith and for the purpose of giving notice to each of the seller's creditors at least ten days before the consummation of the sale (the purchaser having first inquired of the seller and received from him a list in writing of the names, places of business of and indebtedness to each) of the time and place, when and where the transfer is to be made to him, and when and where the consideration is to be paid.

This section contains a proviso that no proceedings at law or in equity shall be brought against the purchaser to invalidate any such voidable sale after the expiration of ninety days from the consummation thereof.

The statute which we are considering is practically the same as the act of 1907. *Pamph. L., p.* 570. It contains the same proviso.

It will be noted that in the body of both acts it is declared that the sale in bulk, &c., shall be "void." In the proviso to the section the sale is termed "such voidable sale."

In *Dickinson* v. *Harbison,* 78 *N. J. L.* 97, Mr. Justice

Reed, speaking for this court (at *p.* 100), said: "The body of the act, as will be observed, declared that a sale should be void as to creditors unless certain things were done by the purchaser. The proviso, however, speaks of the sale as such 'voidable sale.' The word 'void' was used in the sense of voidable. The proviso itself shows that the sale was a nullity only when attacked by creditors within a certain period."

In that case the learned justice raised a query as to the constitutionality of the act. But in the later case—*Kett* v. *Masker,* 86 *N. J. L.* 97—the constitutionality of the act was raised and this court held its provisions to be constitutional. The constitutionality of the act of 1915 has not been raised in the present case, and, therefore, we express no opinion upon it. At any rate we would feel bound to follow the opinion of the Supreme Court on a statute, of which the present is a copy, except for a few slight changes which do not affect the substance of it.

Because the act is drastic in its provisions, and restrictive of the free alienation of property, it should be strictly construed and not be extended to a transaction which does not come clearly within its terms. Guided by this universal canon of statutory construction, we are unable to perceive the applicability of the statute to the facts of the present case. The goods of the Schultz company were sold at a public and not at a private sale. The statute is plainly aimed at private sales of property, and not at public sales. Unless we adopt this view the sale of one's goods and chattels at public auction conveys no title to the purchaser, though the sale and purchase are made in good faith. And in this connection it is difficult to comprehend how a purchaser at such sale can comply with the terms of the statute which require that a buyer shall make inquiry of the vendor and demand an inventory of him of his creditors and to send to each a ten days' notice of the buyer's intended purchase and the amount of consideration to be paid and the place where it is to be paid. It needs no further discussion

to demonstrate how absurd it would be to attempt to fit these requirements of the statute to a purchase made at a public auction.

Moreover, the legislature, by the proviso referred to, contemplated judicial action by a competent tribunal, to invalidate any such voidable sale, by an action at law or a suit in equity initiated by a creditor of the seller. This situation is not present here.

In the view expressed, it becomes unnecessary for us to consider the question argued, whether in the present proceeding the burden was upon the defendant to establish affirmatively that the provisions of the statute were not complied with by the purchaser.

For the respondent, it is argued that a landlord does not belong to the class of creditors contemplated by the statute under consideration. Assuming, for the purpose of the present case, that the landlord is included in the class, it does not thereby clothe him with any superior right to that possessed by a general creditor. The defendant must rest its right, if it has any, on its status as landlord and of having acquired a lien upon the goods purchased by the plaintiff before the purchase was made. By the state of the case it appears that the distress warrant was not issued against the goods and chattels of the tenant until a day after the sale was consummated, and no levy was made under the warrant until some time afterwards. It is, therefore, clear that the defendant acquired no lien under the distress warrant on the goods purchased by the plaintiff. *Woodside* v. *Adams,* 40 *N. J. L.* 417; *Bodell* v. *Realty Securities Investment Co.,* 88 *Id.* 155; *affirmed,* 89 *Id.* 707.

The judgment of the court below is affirmed, with costs.