## FREEDMAN & MELLINGER v. MAIER.*
### (No. 6695.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 22, 1922. Rehearing Denied March 22, 1922.)

Fraudulent conveyances ⬳172(1)—Sale of goods in bulk is voidable, not "void"; hence law no defense to purchaser.

In the expression in Bulk Sales Law (Rev. St. art. 3971), "shall be void as against creditors," the word "void" means voidable, and that at the demand of the creditors the sale would be rendered invalid, but not for any other reason void or voidable; hence a purchaser of a stock of goods cannot invoke any of the provisions of the Bulk Sales Law to protect or shield him from his obligations to perform.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Void.]

Appeal from District Court, Gillespie County; J. H. McLean, Judge.

Action by F. J. Maier against Freedman & Mellinger. From judgment for plaintiff, defendants appeal. Affirmed.

Jno. W. Thames, of Kenedy, and L. H. Browne, of San Antonio, for appellants.
A. P. C. Petsch, of Fredericksburg, and Taliaferro, Cunningham & Moursund, of San Antonio, for appellee.

COBBS, J. Appellee sued appellants to recover the sum of $1,000, with interest, growing out of an alleged breach of a written contract for the sale of a stock of goods, wares, and merchandise and fixtures situated in a store in Fredericksburg, owned by appellee, which appellants agreed to purchase, but breached the contract; the measure of damages being fixed in the contract itself at said amount, as liquidated damages.

The contract was in writing and provided for the sale of the entire stock of goods, fixtures, wares, and merchandise in the store, commonly called "Daylight Store," at Fredericksburg; the consideration being 73 per cent. of the marked cost price, and the fixtures at 75 per cent. of the cost price of same. The terms of payment were $5,000 cash and balance in notes bearing 7 per cent. interest. It was provided:

"In event of the failure on account of inability or unwillingness to perform on the part of either party to this contract, the party so defaulting hereby agrees to become liable in the sum of one thousand dollars, to be taken as liquidated damages to compensate the other party hereto."

This contract was executed in duplicate, a copy for each party.

After having urged a general demurrer to plaintiff's petition, that it divulged a sale of merchandise in bulk upon which there was money owing, when he was to sell the same free of liens, and that the law read into the contract article 3971 of the Revised Civil Statutes, and because it showed a failure to allege facts in compliance with the Bulk Sales Law by him, he stated no cause of action, appellants answered, admitted, and pleaded by way of confession and avoidance that the contract, sale, and purchase was as set forth in the written contract, admitting the nonpayment of the $5,000 cash and refusal to execute the notes, and they justify their refusal on the ground that appellee did not comply with the Bulk Sales Law. Appellants do not say the sale was absolutely void for that reason, but say that on October 18th, after the contract was made, appellee furnished a list of creditors, but nowhere alleges that was a part of the agreement and left out by fraud or mutual mistake, but in the

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 10, 1922.

answer admitted the contract as alleged in which no mention of creditors was made. On October 27, 1919, appellee demanded in writing that appellants comply with their contract to pay the $5,000 cash and execute note for the balance due, and carry out their trade, or the contract would be canceled and suit be instituted to recover the $1,000 liquidated damages, all of which appellants refused to do.

Appellants pleaded in reconvention to recover from appellee the said sum of $1,000 liquidated on the ground that appellee, himself, breached the contract, in not allowing defendants the statutory time in which to advise the creditors, and thus clear the title to the merchandise and fixtures in accordance with the Bulk Sales Law.

The case was tried with a jury upon special issues, and the findings of the jury were in favor of appellee. Both parties filed motions for judgment, and the court entered a judgment upon the findings of the jury for $1,000, with 6 per cent. interest thereon from October 9, 1919.

The main error assigned, and propositions thereunder, is that the undisputed evidence shows a proposed sale of fixtures and a stock of merchandise in bulk, which the seller was to convey in bulk, which would be unavailing to pass a valid, free, and unincumbered title thereto, being inhibited by the provisions of article 3971, R. S., unless it was shown that appellee complied with its terms and provisions.

While appellants do not in express terms plead that the sale was void by reason of noncompliance therewith, their plea is tantamount to saying the contract of sale was ineffectual to pass the title, which would mean the same thing as to say it was void.

There are no material controverted facts.

It was admitted the contract in writing was the only contract that provided for, or was made in respect to, the sale, and there is no dispute as to any of its parts; nor is it claimed that there were other terms not written therein, omitted through fraud or mutual mistake, and it is not alleged that appellee did not comply with all its terms.

There is nothing in the language of the contract itself to show the sale was intended to be governed by the Bulk Sales Law, or that it was contemplated or in the minds of the parties at the making and execution of the contract.

There is nothing to show that the sale was made with the purpose and intent to cheat and defraud the creditors of appellee. In fact, the proof showed at the time of sale that the appellee was solvent and able to pay all his creditors. It is not upon that, the appellants ground their defense. As we understand it, the contention of appellants generally is that no merchant owning a stock of goods, wares, and merchandise, and doing business as such merchant, can pass a valid title to the same at all unless such seller makes the sale in accordance with or as prescribed by the Bulk Sales Law and gives the notices to all the creditors.

This law obviously was passed for the protection and benefit of the creditors and they would have their right to enforce the same in any sale. At most, they would have a lien on the goods. Such a lien, if it did exist, by the terms of the law as a statutory lien, would no more prevent the owner from selling than any other lien thereon would inhibit it. True, the purchaser would take the property charged with the valid superior lien, and just so, in case of the sale of goods in bulk, the purchaser would be charged with a constructive or statutory lien upon the goods. There is nothing in the statute that makes or attempts to make such a sale void. The statute would hardly go that far, to interfere with men in the liberty of contract and sales of property. Yet it was no doubt wise legislation in such cases to preserve the liens against goods in bulk sales for the benefit of the creditors.

The Bulk Sales Law, for the protection of the creditors, may properly be said to be read into every contract for the sale of goods and merchandise in bulk. That is all. It is not to be read therein for the benefit or protection of purchasers against their failure to make proper reservations. They must look out for themselves in making their contracts, having knowledge of the law in reference to such sales, and should protect themselves by contract, verbal or written. The same rule of law or reason does not apply to purchasers as it does to creditors. In such sales the creditors would perhaps have no actual notice of such sales, in order to protect themselves; whereas, the purchaser is in a position when he makes the contract to write in the contract the requirements of the law, and, if not prudent and diligent, can claim no protection of the law made for the benefit of creditors.

The law will permit all lawful contracts to be entered into between parties, notwithstanding the Bulk Sales Law, so long as the rights of creditors, who alone can complain, are not interfered with. Smith-Calhoun Rubber Co. v. McGhee Rubber Co. (Tex. Civ. App.) 235 S. W. 323; Warren v. Parlin-Orendorff Co. (Tex. Civ. App.) 207 S. W. 586, 591; Escalle v. Mark, 43 Nev. 172, 183 Pac. 387, 5 A. L. R. 1512; Burnett v. Trimmell, 103 Kan. 130, 173 Pac. 6, L. R. A. 1918E, 1058; Newman v. Garfield, 93 Vt. 16, 104 Atl. 881, 5 A. L. R. 1507; Oregon Mill & Grain Co. v. Hyde, 87 Or. 163, 169 Pac. 791; McGreenery v. Murphy, 76 N. H. 338, 82 Atl. 720, 39 L. R. A. (N. S.) 374; 12 R. C. L. p. 525, § 54.

There is no fact or circumstance to show that it was within the contemplation or mind of either party that the sale was being made

and governed by the Bulk Sales Law, and hence there was no requirement by the parties that a list of creditors be given so as to give time to notify creditors. The fact is that at the request of appellant, subsequently made, a list was furnished, but that was not in pursuance of any requirement of the contract, but, being a reasonable request, it should have been furnished as information to appellants for future use.

There was no error of the court in refusing appellants' special requested charges, for they were harmless and none necessary for the ultimate disposition of the case. This is a fact case, and no other disposition could have been made of it than was made.

There are a number of irrelevant facts discussed and issues presented all in support of appellants' contention that the sale is invalid because of the violation of the Bulk Sales Law, but as between the seller and buyer the contract is perfectly valid and enforceable. In such sales there is no fraud involved in the transaction, since, whether the sale be made with or without reference to that law, it gives a creditor's lien on the stock. We do not place any special importance, in the disposition of this case, to the expression in that law: "Shall be void as against the creditors." There is no word in the law books so carelessly used as the word, "void." It seems to us that no lawyer can so far misapprehend the use of the word here, other than that it is meant or must be construed to mean voidable, and at the demand of the creditors the sale would be rendered invalid, but not for any other reason void or voidable. As to the use of the word, see Fred Miller Brewing Co. v. Coonrod (Tex. Civ. App.) 230 S. W. 1102, citing Downs v. Blount, 170 Fed. 15, 95 C. C. A. 289, 31 L. R. A. (N. S.) 1087; Southern National Insurance v. Barr (Tex. Civ. App.) 148 S. W. 845. See, also, Smith-Calhoun Rubber Co. v. McGhee Rubber Co. (Tex. Civ. App.) 235 S. W. 323, holding the sale under the statute is only void between the seller and the creditor, and the purchaser cannot invoke any of its provisions to protect or shield him from his obligations to perform his contract. The law is made for the protection of creditors, and the authorities cited by appellee seem to well support the position that such sales are voidable as against creditors, and made for their protection only and not available to purchasers who have purchased without reference to that law.

We have carefully examined the assignments, propositions, and authorities cited by appellants, and they do not support their contention, though ably discussed and presented. We have reached the conclusion that no reversible error is apparent, and the judgment of the trial court is affirmed.